Points Decided.

(June 1, 1922.)

CHARLES O. DUMAS, Appellant, v. E. A. BRYAN,
   STANLEY EASTON, I. E. ROCKWELL, ETHEL E.
   REDFIELD, EVAN EVANS, J. G. H. GRAVELEY
   and J. A. LIPPINCOTT, Being the Board of Educa-
   tion of the State of Idaho, Respondents.

[207 Pac. 720.]

CONSTITUTIONAL LAW—HOUSE AND SENATE JOURNALS, WHEN CONCLU-
   SIVE EVIDENCE BILL HAS LEGALLY PASSED—REVENUE BILLS, WHAT
   ARE—MUST ORIGINATE IN HOUSE.

1. Where the journals of the senate and house of representa-
tives show respectively that a bill was regularly passed by the
Senate, transmitted to the House, where it received a constitu-
tional majority in that body, was thereafter returned to the Senate
unchanged, was there enrolled, signed by the president of the
Senate, again transmitted to the House and signed by the
speaker, and thereafter duly approved by the Governor, it is con-
clusive that the constitutional requirements with reference to the
passage of the bill were complied with.

2. Where an act originates in the Senate which, among other
things, assesses upon all taxable property in the state for a
given period a tax of one-eighth mill on the dollar, the proceeds
of such levy being thereby appropriated for the purpose of erect-
ing buildings for one of the state's normal schools, which the bill
proposes to move to a new location, it is a bill for raising revenue,
and must originate in the House of Representatives, and if it
does not so originate, the method of its enactment is in contraven-
tion of art. 3, sec. 14 of the constitution, and such act is void.

3. Where an act directs the state board of education to erect
suitable buildings for one of its state normal schools, in time for
the commencement of the school year of 1922, out of a tax levy
of one-eighth mill, which the bill assesses upon all of the taxable
property of the state, and such tax levy is void because of being
a revenue measure not having originated in the House of Repre-
sentatives, the entire bill falls, there being no other provision for
the construction of the necessary buildings.

APPEAL from the District Court of the Eleventh Judicial District, for Cassia County. Hon. T. Bailey Lee, Judge.

Action to obtain an injunction against defendants. From judgment of dismissal, plaintiff appeals. *Reversed* and *remanded,* with instructions to grant injunction.

Walters, Hodgin & Bailey and R. P. Parry for Appellant.

The method of passing chap. 110, Sess. Laws 1921, is contrary to and violates sec. 15, art. 3, Idaho constitution. (*Cohn v. Kingsley,* 5 Ida. 416, 49 Pac. 985, 38 L. R. A. 74; *In re Drainage District No. 1,* 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210; *Gardner v. Collector,* 6 Wall. 499, at 511, 18 L. ed. 890; *Milwaukee v. Isenring,* 109 Wis. 9, 85 N. W. 131, 53 L. R. A. 635; *Loftin v. Watson,* 32 Ark. 414; *Haney v. State,* 34 Ark. 263; *Burks v. Jefferson County,* 40 Ark. 200; *State v. Savings Bank of New London,* 79 Conn. 141, 64 Atl. 5; *Berry v. Baltimore & D. P. R. Co.,* 41 Md. 446, 20 Am. Rep. 69; *Dunn v. Brager,* 116 Md. 242, 81 Atl. 516; *State v. Rawlings,* 232 Mo. 544, 134 S. W. 530; *New Hanover County Commrs. v. DeRosset,* 129 N. C. 275, 40 S. E. 43; *Bowen v. Missouri Pac. Ry. Co.,* 118 Mo. 541, 24 S. W. 436; *Brannock v. St. Louis M. v. S. E. R. R. Co.,* 200 Mo. 561, 118 Am. St. 695, 98 S. W. 604; *Rogers v. State,* 72 Ark. 565, 82 S. W. 169.)

The act in question is in violation of sec. 3, art. 14 of the constitution. (1 Story's Constitution, sec. 880; *The Nashville,* 4 Biss. 188, 17 Fed. Cas. 1176 (No. 10,023); *United States v. Mayo,* 26 Fed. Cas. 1230 (No. 15,754); *Perry County v. Selma etc. Ry. Co.,* 58 Ala. 546; *Harper v. Commissioners,* 23 Ga. 566; *Anderson v. Ritterbusch,* 22 Okl. 761, 98 Pac. 1002.)

A bill, one of whose main provisions is to raise revenue, must originate in the House of Representatives. (*In re Lee* (Okl.), 168 Pac. 53; *Mumford v. Sewall,* 11 Or. 67, 50 Am. Rep. 462, 4 Pac. 585; *Lang v. Commonwealth,* 190 Ky. 29, 226 S. W. 379; *Twin City Bank v. Nebeker,* 167

U. S. 196, 17 Sup. Ct. 766, 42 L. ed. 134; *State v. Bernheim,* 19 Mont. 512, 49 Pac. 441; *Re Ambler,* 11 Okl. Cr. 449, 148 Pac. 1061; *Geer v. Board of Commissioners,* 97 Fed. 435, 38 C. C. A. 250; *Hubbard v. Lowe,* 226 Fed. 135.)

Morris & Griswold, Roy L. Black, Attorney General, and Dean Driscoll, Assistant, for Respondents.

The journals of the House and Senate are conclusive and exclusive evidence of what was done by the legislature in the passage of a bill. (*Burkhart v. Reed,* 2 Ida. 503, 22 Pac. 1; *Blaine County v. Heard,* 5 Ida. 6, 45 Pac. 890; *Cohn v. Kingsley,* 5 Ida. 416, 417, 49 Pac. 985, 38 L. R. A. 74; *Farr v. Western etc. Sav. Co.,* 15 Ida. 741–751, 99 Pac. 1049, 21 L. R. A., N. S., 707; *Swain v. Fritchman,* 21 Ida. 783, 125 Pac. 319; *In re Drainage District No. 1,* 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210; *State v. Eagleson,* 32 Ida. 280, 181 Pac. 935.)

The provisions of this act for raising revenue are merely incidental to the main object or purpose of the act which is the removal of the Normal from Albion to Burley. As such, they are no violation of the constitutional provision. (1 Story, 5th ed., sec. 880; *Chicago B. & Q. R. Co. v. School District,* 63 Colo. 159, 165 Pac. 260; *Twin City Bank v. Nebeker,* 167 U. S. 196, 17 Sup. Ct. 766, 42 L. ed. 134; *Millard v. Roberts,* 202 U. S. 429, 26 Sup. Ct. 674, 50 L. ed. 1090; *Twin Falls Canal Co. v. Foote,* 192 Fed. 583; *Fletcher v. Oliver,* 25 Ark. 289; *Evers v. Hudson,* 36 Mont. 135, 92 Pac. 462, 35 L. R. A. 188, note.)

LEE, J.—The Albion State Normal School was established at Albion, Cassia county, in 1893 (L. 1893, pp. 179–182), and has since been maintained and operated at that place. By chapter 110, L. 1921, p. 256, the sixteenth session passed Senate Bill No. 298, which authorizes and directs the state board of education to remove this school to the city of Burley, in the same county. Acting under and by virtue of this act, said board has accepted a site of approximately forty acres in the vicinity of Burley, and is

about to move this school to the new location. Appellant commenced this action in the district court of the eleventh district, in and for Cassia county, to enjoin the board from so doing, upon the ground that said Senate Bill No. 298 is unconstitutional and therefore void. After a hearing, the district court dismissed the bill, from which judgment this appeal is taken.

The grounds upon which the constitutionality of this removal act is challenged are: (1) That it was not enacted as required by art. 3, sec. 15, of the constitution; (2) that it being a revenue bill and having originated in the senate, is in contravention of art. 3, sec. 14 of said instrument; (3) that it is in violation of art. 10, sec. 7.

The provisions of said act which are particularly drawn in question by this action are:

"Sec. 1. That the state board of education is hereby authorized and directed to remove the normal school heretofore established at the town of Albion in the county of Cassia and called the Albion state normal school, to a site to be selected and acquired by said board at the city of Burley in Cassia county; *provided,* that prior to May 1, 1921, there shall be donated to the state of Idaho for the use of said normal school a tract of not less than 40 acres of land within or contiguous or adjacent to the city of Burley . . . .

"Sec. 2. The state board of education is hereby authorized and directed to cause the Albion normal school to be continued during the school year of 1921 at its present location, and, in the event of its removal as herein provided for, to thereafter make such disposal of the buildings and grounds at Albion belonging to the school as may be deemed by the board to be to the best advantage of the state, and the said board may, in its discretion, remove said buildings or any part or portion of them, or any of their contents or equipment, or any part thereof, and use the same in constructing, furnishing and equipping buildings to be provided or erected on the new site of said school: *provided,* that if such buildings, furniture, fixtures, grounds

or any part thereof, shall be sold, the proceeds of such sale are hereby appropriated to and for the use and benefit of the Albion normal school. . . . .

"Sec. 3. The state board of education is hereby authorized and directed to cause to be erected on the above mentioned tract of land at Burley, when the same shall have been donated and conveyed as herein provided for, in time for the commencement of the school year in September, 1922, suitable buildings for the purposes of said school, and at that time to remove said school from its present location to the new location as herein provided for, and that hereafter said school shall be conducted in said location under the name of the Albion state normal school.

"Sec. 5. That there is hereby assessed upon all taxable property within the state of Idaho, for the years 1921–1922, a tax of one-eighth mill on the dollar, and the proceeds thereof are hereby appropriated for the purpose of erecting the buildings herein provided for."

Appellant's first contention is that said Senate Bill No. 298 was not passed by the legislature in accordance with the requirements of art. 3, sec. 15, of the constitution, which requires that: "No law shall be passed except by bill, nor shall any bill be put upon its final passage until the same, with the amendments thereto, shall have been printed for the use of the members; nor shall any bill become a law unless the same shall have been read on three several days in each house previous to the final vote thereon," the contention being that because there were lodged with the Secretary of State two engrossed bills, one of which differs from the enrolled bill, it is conclusive that the act was not passed in accordance with this provision of the constitution. This contention is without merit. The Senate journal shows that this bill was regularly passed by the Senate and transmitted to the House. (Senate Journal, 16th Session, p. 612.) The House journal shows that it received a constitutional majority in that body, and was thereafter returned to the senate unchanged. (House Journal, 16th Session, p. 573.) The respective journals then show that

35 Idaho—36

it was referred to the enrolling committee, reported enrolled, signed by the president of the Senate, transmitted to the House and signed by the speaker, and thereafter duly approved by the Governor. This is conclusive upon the courts that the proceedings with reference to the passage of this bill were according to the constitutional requirements. (*Burkhart v. Reed,* 2 Ida. 503, 22 Pac. 1; *Cohn v. Kingsley,* 5 Ida. 416, 49 Pac. 985, 38 L. R. A. 74; *In re Drainage Dist. No. 1,* 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210.)

The validity of this act is also denied on the ground that it is a bill for the raising of revenue, and it having originated in the Senate, contravenes art. 3, sec. 14, of the constitution, which reads:

"Sec. 14. *Origin and Amendment of Bills.* Bills may originate in either house, but may be amended or rejected in either house, except that bills for raising revenue shall originate in the house of representatives."

Counsel for respondents insists that appellant not having raised this question or presented it to the court below for consideration, it may not now be considered upon this appeal. It appears from the record that the question is being raised for the first time in this court. However, where an action seeks to enjoin the performance of any act upon the ground that the law authorizing the doing of such act is unconstitutional and void, the validity of the law in question is before the courts until finally determined, for as said by Justice Field in *Norton v. Shelby County,* 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. ed. 178: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

See, also, *State v. Candland,* 36 Utah, 406, 140 Am. St. 834, 104 Pac. 285, 24 L. R. A., N. S., 1260, and note; *Ex parte Siebold,* 100 U. S. 371, 25 L. ed. 717; *Huntington v. Worthen,* 120 U. S. 97, 7 Sup. Ct. 469, 30 L. ed. 588; *Threadgill v. Cross,* 26 Okl. 403, 138 Am. St. 964, 109 Pac.

558; *Bonnett v. Vallier,* 136 Wis. 193, 128 Am. St. 1061, 116 N. W. 885, 17 L. R. A., N. S., 486; *Gunn v. Barry,* 15 Wall. 610, 21 L. ed. 212; *State v. Williams,* 146 N. C. 618, 14 Ann. Cas. 562, 61 S. E. 61, 17 L. R. A., N. S., 299; *Chicago I. & L. R. Co. v. Hackett,* 228 U. S. 559, 33 Sup. Ct. 581, 57 L. ed. 966; *State v. Rice,* 115 Md. 317, Ann. Cas. 1913A, 1247, 80 Atl. 1026, 36 L. R. A., N. S., 344.

It is held by all of the authorities that an unconstitutional law is in legal effect no more than a blank page, and therefore the question of its validity or of any rights sought to be exercised under it is never waived, but may always be raised at any stage of the proceedings wherein the power conferred or the right sought to be exercised under the act is drawn in question. The constitutionality of Senate Bill No. 298 is directly drawn in question by this action, and therefore any ground upon which it is claimed to be in contravention of the fundamental law of the state is before us, and is pertinent to this inquiry.

Art. 3, sec. 14, is a provision common to most of the states, and in effect is found in the federal constitution. The purpose of incorporating it into the fundamental law is that laws for raising revenue are an exercise of one of the highest prerogatives of government, and confer upon taxing officers authority to take from the subject his property by way of taxation for the public good, a burden to which he assents only because of it being necessary in order to maintain the government, and the people have accordingly reserved the right to determine this necessity by that body of the legislature which comes most directly from the people, the House of Representatives.

Sec. 5 of this removal act levies upon all of the taxable property within the state for the years of 1921–1922 a tax of one-eighth of a mill on the dollar, the proceeds of such levy being appropriated for the purpose of erecting new buildings made necessary by this change of location. Counsel for respondent urge that the provisions of this act for raising revenue are merely incidental to the main object or purpose of the act, such main purpose being the

removal of the normal school from Albion to Burley, and direct our attention to many cases holding that where the revenue part of an act is merely an incident and not the principal purpose for which it was enacted, the fact that it contains a provision for raising revenue as an incident to such purpose does not make it a revenue law within the meaning of this constitutional provision.

Thus in *Chicago, B. & Q. R. Co. v. School District No. 1,* 63 Colo. 159, 165 Pac. 260, an act amending a former law which established a system of public schools, and as an incident to such amendment, provided for the raising of revenue to meet the requirements of the law as amended, was properly held not to be an act for the raising of revenue, which under the constitution must originate in the House of Representatives.

So in *Evers v. Hudson,* 36 Mont. 135, 92 Pac. 462, it is held that an act authorizing the establishment of county free high schools, and providing for a tax to supply funds for the current expenses of such schools and for bond issues to raise money for building or purchase of school property, authorizing the commissioners to make a tax levy upon all of the property, for the support thereof, and limiting the funds so raised exclusively to this purpose, does not fall within the purview of this constitutional provision.

It is generally held that acts creating incorporated towns or other political subdivisions of the state, with certain restricted governmental powers, including the right to levy taxes for the purposes for which such subdivisions are created, are not acts for raising revenue within the meaning of this constitutional provision. (*Harper v. Commissioners,* 23 Ga. 566.)

Bouvier's Law Dictionary, vol. 3, p. 2953, defines "revenue" as being "the income of the government, arising from taxation."

*United States v. James,* 13 Blatchf. 207, Fed. Cas. No. 15,464, defines a revenue bill as being one that draws money from a citizen, and gives him no direct equivalent

in return, and that in respect to such bills, it was reasonable that the immediate representatives of the taxpayers should alone have the power to originate the same.

In *Perry County v. Selma etc. R. R. Co.*, 58 Ala. 547, it is said that a bill for raising revenue, as termed in the constitution, is a bill providing for the levy of taxes as a means of collecting revenue—hence a bill for reducing taxes, if it provides for collecting revenue, is still a bill for raising revenue.

In *Millard v. Roberts, Treasurer of the United States*, 202 U. S. 429, 26 Sup. Ct. 674, 50 L. ed. 1090, it is said that bills for other than tax purposes, but which may incidentally create revenue, are not revenue bills, which under U. S. Const., art. 1, sec. 7, must originate in the House of Representatives. This opinion approves Story on Constitutional Law, wherein he lays down the rule that revenue bills are those which levy taxes for governmental purposes in the strict sense of the word, and are not bills for other purposes, which may incidentally create revenue.

"Either one House or the other of a legislative body is sometimes clothed with powers not conferred upon the other. Under the constitution of the United States, and of many of the states, all bills for the raising of revenue must originate in the House of Representatives, or the lower House as it is called. Bills of revenue are those which draw money from the people to the state, without giving direct equivalent in return therefor. They do not include bills permitting the taxation of real property mortgages as land in the county where recorded, bills seeking a local object for the accomplishment of which it is necessary to raise money by tax upon the locality affected, bills permitting municipalities to impose license taxes for municipal purposes. . . . . The precise meaning of the clause 'to raise revenue' is to levy a tax as a means of collecting revenue.'' (36 Cyc. 946.)

In *Hubbard v. Lowe*, 226 Fed. 135, the court had under consideration the question of the constitutionality of an act which was passed primarily for the purpose of sup-

pressing or destroying every form of contract for the future delivery of cotton, except that marked out by the statute. It was conceded that this was the purpose of the act, and not the raising of revenue. But the court said that it was immaterial what was the intent behind the statute, it was enough that a tax was levied, and therefore it was a bill for raising revenue within the meaning of the federal constitution, which required that such bills originate in the House.

Sec. 5 of this act is a measure for raising revenue; that is, it is a revenue bill, or money bill, as those terms are usually used. It provides for levying a direct tax against all property in the state, for governmental purposes. It requires no argument to prove that the state maintains the Albion normal school in its governmental capacity. It will not do to say that this tax represents a mere incident to the main purpose of the bill, for this would be a mere evasion. Most revenue bills could in the same manner be made incidental. The amount of the tax levied is immaterial, for the constitution requires that all bills for raising revenue shall originate in the house. This is as truly a tax levied for governmental purposes as it would be if levied for the construction of a capitol building, an insane asylum, or for the support of any department of the state government, and therefore falls within the inhibition of art. 3, sec. 14, of the constitution.

It is further contended that this act is in derogation of art. 10, sec. 7, of the constitution, which reads: "Sec. 7. The legislature for sanitary reasons may cause the removal to more suitable localities of any of the institutions mentioned in section one of this article." But in view of the conclusion already reached, it is unnecessary to discuss this further assignment.

Therefore the only remaining question necessary to be considered is whether the other provisions of this act are so connected in subject matter, dependent upon each other, and designed to act for the same purpose, or are otherwise so dependent in meaning, that it cannot be presumed that

the legislature would have passed one without the other, that if one part is unconstitutional, the entire act is void. (*Cunningham v. Thompson,* 18 Ida. 149, 108 Pac. 898; *Epperson v. Howell,* 28 Ida. 338, 154 Pac. 621.)

By sec. 5 of said act, the state board of education is authorized and directed to cause to be erected in time for the commencement of the school year in September, 1922, suitable buildings for the purposes of said school, and at that time to remove said school from its present location. It is therefore clear that unless the board is furnished with funds to erect these buildings, the school cannot be moved, for while the preceding section authorizes the board to dispose of the buildings and grounds at Albion to the best advantage of the state, or remove said buildings or any portion of them, or any of their contents or equipment, this can only be done, by the terms of the act, after the removal of the school. Hence the revenue section being void, the entire bill falls, there being no other provision for the construction of the necessary buildings.

The judgment of the lower court dismissing the bill is reversed, with instructions to reinstate the cause of action and issue a permanent injunction against respondents as prayed for in the bill, and it is so ordered. No costs awarded.

Rice, C. J., and Budge and Dunn, JJ., concur.

McCarthy, J., dissents.